**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Judge Raymond P. Moore**

Civil Action No. 15-cv-00025-RM-STV

MELISSA STECKMYER-STAPP,

     Plaintiff,

v.

PETSMART, INC., a Delaware corporation,

     Defendant.

---

**ORDER GRANTING DEFENDANT'S MOTION for SUMMARY JUDGMENT**

---

## I.   INTRODUCTION

This case involves a dispute between Plaintiff Melissa Streckmyer-Stapp (Plaintiff), and her former employer Defendant PetSmart, Inc., (Defendant).  Plaintiff alleges two claims against Defendant: (1) Family and Medical Leave Act (FMLA) interference in violation of 29 U.S.C. §§2615(a)(1); 2617(a) and 29 C.F.R. §825.220; and (2) retaliation for using FMLA leave in violation of 29 U.S.C. §§ 2615(a)(2); 2617(a) and 29 C.F.R. §825.220.  (ECF No.1).  Plaintiff alleges that Defendant interfered with her FMLA leave by: failing to send all mailed correspondence regarding Plaintiff's FMLA leave to her address of record; misplacing her completed certification; and failing timely to notify Plaintiff as to the status of her requested leave[1].  (ECF No. 36, pp.14-10).  Plaintiff asserts that Defendant retaliated by terminating her

---

[1] The Court notes that the Complaint (ECF No.1) cannot fairly be construed as raising an interference claim based on these theories.  Nonetheless, these theories are the only ones raised in response to the Motion for Summary Judgment.

employment on September 1, 2014, four weeks before the conclusion of her FMLA leave.  (ECF No. 36, pp.13-19).

Defendant moves for Summary Judgment against Plaintiff's claims arguing; (1) that it did not interfere with her FMLA leave given that she took a full 12 weeks of leave and was reinstated to her former position and (2) Plaintiff's retaliation claim fails as a matter of law because (i) she was not terminated, and (ii) any "termination" was not related to Plaintiff's exercise of her FMLA rights.  (ECF Nos. 33; 39).

## II.    FACTUAL BACKGROUND

### A.    Undisputed Facts

The following undisputed facts are gleaned from the court's review of the record.

Plaintiff began her employment with Defendant in October 2011.  (ECF Nos.33-3, p.10; 36-2, p.1; 39-2, p.1).  Plaintiff began work with Defendant as a cashier but, beginning in the spring of 2012, she worked as a pet stylist.  (ECF Nos. 33-3, p.11; 36-2, pp.1-2; 39-2, p.1).  At all relevant times, Defendant PetSmart's Lakewood store's manager was Joel Stretz, operations manager was Kevin Hegstrom, salon manager was Natasia Van Meer and benefits administrator was Danielle Frey.  (ECF Nos. 33-3, pp.2, 8; 36-2, p.2; 39-2, pp.1-2).  Ms. Frey worked out of a benefits office located in Phoenix Arizona.  (See e.g., ECF No. 33-19)

Throughout her employment, Plaintiff worked at the Lakewood, Colorado, PetSmart store located approximately 10-15 minutes from her home.  (ECF Nos. 33-3, p.6; 36-2, p.1; 39-2, p.1).  Plaintiff's adult daughter Katie Wood's home was also about a 10 minute drive from the Lakewood PetSmart store.  Id.  Beginning in March 2014 and through June 2014, Plaintiff's

daughter Katie complained of migraine headaches.  (ECF Nos. 33-3, pp.14-15; 36-2, p.2; 39-2, p.2).  At the end of June 2014, Katie passed out at her work place and was taken to hospital where, after testing, she was diagnosed with a brain tumor.  *Id.*  Katie was scheduled for surgery on July 2, 2014.  *Id.*  Her post-operative diagnosis was a Stage IV glioblastoma.  (ECF Nos. 33-3, p.13; 33-4, p.1; 36-2, p.2; 39-2, p.2).  On or about July 7, 2014, Plaintiff discussed taking leave from work to care for her daughter with Mr. Stretz, Plaintiff's store manager.  (ECF Nos. 33-4, p.1; 36-2, p.2; 39-2, p.2).

Defendant's policy on FMLA leave, posted on its website, states that employees are required to "submit certification from a health care provider to substantiate that the leave is due . . . within 21 days of receipt of the certification form."  (ECF Nos. 33-8, p.2; 36-2, p.3; 39-2, pp.2-3).  The policy further provides that "[i]f the associate fails to provide the certification within a reasonable time PetSmart has the right to deny the leave."  *Id.*  Defendant's Attendance and Tardiness Procedure states "[a]ssociates will be considered to have voluntarily resigned employment from PetSmart if they are absent for two (2) consecutive scheduled days without proper notification to PetSmart."  (ECF Nos. 33-10, p.1; 36-2, p.4; 39-2, p.4).

On July 8, 2014, Plaintiff was listed in Defendant's internal system as being on a FMLA leave of absence effective July 7, 2014.  (ECF Nos.1, p.2; 33-12, p.2; 33-13; 36-2, p.5; 39-2, p.5).  On July 11, 2014, Ms. Frey sent Plaintiff the required Notice and Healthcare Provider Certification form which stated that Plaintiff was to have it completed and return it to Ms. Frey by July 28, 2014.  (ECF Nos. 33-4, p.3; 33-14, p.2; 36-2, p.6; 39-2, p.6).  Plaintiff received the Notice and Healthcare Provider Certification form sent by Ms. Frey on or about July 14, 2014. (ECF Nos. 33-4, p.2; 36-2, p.7; 39-2, p.7).

Sometime in the first week of August, 2014, Ms. Frey telephoned Plaintiff's home and told Mr. Sapp (Plaintiff's husband) that she had not yet received the FMLA certification paperwork. (ECF Nos. 1, p.2, ¶11; 33-6, p.8; 36-2, p.8; 39-2, p.9). In that telephone conversation, Mr. Sapp told Ms. Frey that he had dropped off the completed form at the Lakewood store approximately two weeks previously. (ECF Nos. 1, p.2, ¶11; 33-6, p.9; 36-2, p.8; 39-2, p.9). Immediately following that call, Ms. Frey telephoned the Lakewood store and spoke with the operations manager Kevin Hegstrom who did not remember receiving Plaintiff's form but said he would look for it. (ECF Nos. 33-6, pp.11-13; 36-2, p.8-9; 36-3, pp.14-17; 39-2, p.9). On or about August 5, 2014, Ms. Frey left a voicemail on Plaintiff's home phone asking her to contact Ms. Frey because she still did not have Plaintiff's completed certification form. (ECF Nos. 1, p.2, ¶12; 33-4, pp.5-7; 36-2, p.8; 39-2, p.9).

Ms. Frey, in a letter to Plaintiff dated August 22, 2014, stated that because she had not received "any information validat[ing] your need for a leave of absence," Plaintiff's employment "will be terminated for job abandonment effective 9/1/2014." (ECF Nos. 1, p.2, ¶13; 33-17; 36-2, p.10; 36-3, p.17; 39-2, p.12). Plaintiff during this time did not speak directly to Ms. Frey. (ECF Nos. 33-6, p.9; 36-2, p.12; 39-2, p.13). By late August 2014, before she received Ms. Frey's August 22, 2014, letter, Plaintiff was looking for a new job. (ECF Nos. 33-5, pp.11-12; 33-6, p.13; 36-2, p.8; 39-2, p.9).

On or about September 5, 2014, Ms. Frey received a fax from the Lakewood store manager, Mr. Stretz containing Plaintiff's FMLA certification forms. (ECF Nos. 1, p.2, ¶15; 33-7, p.2; 36-2, p.13; 39-2, p.13). Ms. Frey then sent Plaintiff a Designation Notice dated September 10, 2014, stating that Plaintiff's FMLA leave request is approved and began

"7/7/2014 – through 9/28/2014 = 84 days".  (ECF Nos. 1, p.3, ¶16; 33-9, 33-9, p.2, ¶8; 33-11; 36-2, p.14; 39-2, p.15).  Ms. Frey also sent Plaintiff a letter dated September 10, 2014, stating:

"Your approved FMLA will end on 9/28/2014.  PetSmart expects you to report to work on 9/29/2014, at your regular position.  If you are unable to return to work on 9/29/2014, please contact Danielle Frey . . . ."

(ECF No. 33-11, p.1, Ex 2 to Frey Decl.,).

Plaintiff did not call or talk to anyone at PetSmart with regard to the September 10, 2014, communication from Ms. Frey.  (ECF Nos. 33-5, pp.1-3; 36-2, p.15; 39-2, p.15).

However, on September 24, 2014, Plaintiff sent an email to Ms. Frey stating:

"Due to recent circumstances involving interference and retaliation with my FMLA rights, and my current mental status due from [sic] all of this I am unable to return to my workplace.  I am exploring my legal options in this regard."

(ECF No. 33-5, pp.5-6; 33-19; 36-2, pp.15-16; 36-3, pp.24-25; 39-2, pp.16-17).

Ms. Frey responded that same day via email stating:

"Good afternoon Melissa, I'm not sure what retaliation you are referring to, I have approved your leave for the full FMLA duration of 12 weeks."

(ECF No. 33-5, pp.5-6; 33-19; 36-2, pp.15-16; 39-2, pp.16-17).

Plaintiff did not return to work on September 29, 2014.  (ECF No. 33-5, p.1; 36-2, p. 17; 39-2, p.18).  She did not work at PetSmart from July 7, 2014 through September 28, 2014.  (ECF No. 33-4, p.14; 36-2, p. 19; 36-3, pp22-23; 39-2, p.20).  In a letter to Plaintiff dated October 2, 2014, Ms. Frey, noting that Plaintiff had in her September 24th email indicated that she intended to resign from PetSmart, informed Plaintiff *inter alia* that:

" . . . if by 10/10/2014, we do not receive information from you to determine if an extension of your leave of absence can be approved, we will have no choice but to accept your resignation.  You will be eligible for rehire in accordance with the rehire policy."

(ECF No. 33-5, pp.7-8; 33-23; 36-2, pp.17-18; 39-2, pp.18-19).

Plaintiff did not respond to Ms. Frey's October 2nd letter.  (ECF No. 33-5, p.8; 36-2, p. 18; 39-2, p.19).  Neither Ms. Frey nor any other PetSmart employee said anything negative to Plaintiff about taking FMLA leave.  (ECF No. 33-4, p.4; 36-2, p.19; 39-2, pp.18-19).

## B.      Disputed Facts:

The parties disagree about whether Plaintiff received a copy of Defendant's FMLA leave policy; however, they agree that there was a poster regarding FMLA policy in the Lakewood store's break room and that the Defendant posted its FMLA policy on its website.  (ECF Nos. 33-8; 36-3, p.26; 36-4, p.2).  Plaintiff disputes that she knew where or to whom she should return the FMLA certification forms; however, she agrees that she did know when the forms were to be returned.  (ECF No.36-3, pp.5; 9-11).

The parties also disagree about what measures Plaintiff's husband took to timely return her FMLA forms, why Plaintiff's paperwork was not received by Ms. Frey until September 5, 2014, and whether Plaintiff actually received any letters or voicemails of warning beyond the August 5th voicemail, before receiving Ms. Frey's August 22, 2014 letter regarding Plaintiff's need to submit the appropriate certification.  (See e.g., ECF Nos. 33-4, p.13; 33-6, pp.14-15; 33-7, p.2; 36).

## III.   LEGAL STANDARD

Summary judgment is appropriate only if there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law.  Fed.R.Civ.P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); *Henderson v. Inter-Chem. Coal Co., Inc*., 41 F.3d 567, 569 (10th Cir. 1994); *Bones v. Honeywell Int'l, Inc.,* 366 F.3d 869, 875 (10th Cir. 2004).  Whether there is a genuine dispute as to a material fact depends upon whether the evidence presents a sufficient disagreement to require submission to a jury or, conversely, is so one-sided that one party must prevail as a matter of law.  *Anderson v. Liberty Lobby*, 477 U.S. 242, 248-49 (1986); *Stone v. Autoliv ASP, Inc*., 210 F.3d 1132 (10th Cir. 2000); *Zwygart v. Board of County Comm'rs,* 483 F.3d 1086, 1090 (10th Cir. 2007).

A fact is "material" if it pertains to an element of a claim or defense; a factual dispute is "genuine" if the evidence is so contradictory that if the matter went to trial, a reasonable jury could return a verdict for either party.  *Anderson*, 477 U.S. at 248.  The court must resolve factual ambiguities against the moving party, thus favoring the right to a trial.  *Houston v. Nat'l General Ins. Co.*, 817 F.2d 83, 85 (10th Cir. 1987); *Quaker State Mini-Lube, Inc. v. Fireman's Fund Ins. Co.*, 52 F.3d 1522, 1527 (10th Cir. 1995).

The analysis to be applied on a motion for summary judgment differs depending on whether the moving party is also the party with the burden of proof at trial.  Where, as here, the non-movant bears the burden of proof at trial, the non-movant must point to specific evidence establishing a genuine issue of material fact with regard to each challenged element.  *In re Ribozyme Pharmaceuticals, Inc. Securities Litigation*, 209 F.Supp.2d 1106, 1111 (D.Colo.2002); *Reed v. Bennett*, 312 F.3d 1190, 1194 (10th Cir.2002).

# IV       DISCUSSION

The FMLA entitles a qualified employee to up to twelve weeks of leave during any twelve month period.  29 U.S.C. §2612(a)(1)(D).  Additionally the qualified employee is entitled to be restored to the same or an equivalent position upon return from FMLA leave.  29 U.S.C. §2614(a)(1)(A)-(B).  Plaintiff brings this case alleging two claims: (1) interference with her exercise of FMLA leave in violation of 29 U.S.C. §§2615(a)(1); 2617(a) and (2) retaliation for using FMLA leave in violation of 29 U.S.C. §§ 2615(a)(2); 2617(a).  (ECF No.1).

Under 29 U.S.C. §2617(a), qualified employees are authorized to bring an action to recover damages for violations of the FMLA.  Courts have recognized two theories for recovery for aggrieved employees: an entitlement or interference theory pursuant to 29 U.S.C. §2615(a)(1)(unlawful for any employer to interfere with, restrain, or deny the exercise of or the attempt to exercise, any right provided in this subchapter) and a retaliation or discrimination theory under 29 U.S.C. §2615(a)(2)(unlawful for any employer to discharge or in any other manner discriminate against any individual for opposing any practice made unlawful by this subchapter).  *Smith v. Diffee Ford-Lincoln-Mercury, Inc.,* 298 F.3d 955, 960 (10th Cir. 2002).

## 1.       Interference with Exercise of FMLA Leave:

An interference claim is based in FMLA's creation of substantive rights.  *Id.*  Thus, an employer's interference with the employee's right to medical leave or to reinstatement following the leave, is a violation regardless of the employer's intent.   *Id*. (citation omitted).  The employee does not need to show the employer's intent to interfere with that right.  *Id.;* 29 U.S.C. § 2612(a)(1)(D).

A *prima facie* case of interference requires Plaintiff to demonstrate that: (1) she was entitled to FMLA leave; (2) that some adverse action by the employer interfered with her right to take FMLA leave, and (3) that the employer's action was related to her exercise or attempted exercise of FMLA rights. *Campbell v. Gambro Healthcare Inc.,* 478 F.3d 1282, 1287-88 (10th Cir. 2007).

In this instance, the parties agree that Plaintiff meets the first element in that she was entitled to FMLA leave. With regard to the second element, Plaintiff claims that Defendant's omission of her apartment number on its mailed correspondence regarding her FMLA leave, its failure to keep her completed medical certification in a location separate from other unrelated mail, and its alleged failure to notify her within five days of receipt of that certification that her absence would count as FMLA leave, constitute adverse actions that interfered with her right to twelve weeks of leave. (ECF Nos. 1;36 at pp.5-12).

Defendant responds that Plaintiff has failed to allege a cognizable adverse employment action because it is undisputed that Plaintiff requested and was granted leave beginning July 7, 2014, which would therefore run to September 29, 2014, the date which Ms. Frey's September 10, 2014, letter stated Plaintiff was expected to return to work. (ECF No. 39, pp.4-7). Further, Defendant characterizes its August 22, 2014, letter as a "warning" letter rather than a letter of termination. *Id.* at pp.5-6. Defendant further contends that Plaintiff's own conduct including her continuing efforts to submit her medical certification after that August 22nd letter together with her September 24th email of resignation, demonstrates that she believed she was still employed. *Id.*

An adverse employment action includes those where an employee sustains a *significant* change in employment status, such as in hiring, being fired, failing to be promoted, being

reassigned with significantly different responsibilities, or having a significant change in benefits. *Hillig v. Rumsfeld,* 381 F.3d 1028, 1032-33 (10th Cir. 2004); *Burlington Industries Inc. v. Ellerth,* 524 U.S. 742, 761 (1998). Excluded from the definition are "acts that have a *de minimus* impact upon an employee's future job opportunities." *Hillig,* 381 F.3d at 1033. An adverse employment action will in most cases inflict direct economic harm. *Id.*

While there is considerable disagreement between the parties as to who might be responsible for the delay of Plaintiff's medical certification submission or, once submitted, for misplacing it, Plaintiff readily admits that she was placed on leave as of July 7, 2014 and was, as of Ms. Frey's September 10th letter, eligible to return to her former position on September 29, 2014. There is no evidence that Plaintiff suffered any adverse employment action which interfered with her ability to take FMLA leave. Furthermore, despite the initial confusion and cross-communication regarding Plaintiff's leave paperwork, it is undisputed that her employer considered her on FMLA leave as of July 7, 2014, that no negative comments were made regarding her FMLA leave request, and that she had a full twelve weeks of leave. Moreover, as noted earlier, the acts allegedly constituting interference have not even been pled. Her claim fails on this basis alone.

Furthermore, the matters which Plaintiff claims constitute interference are hardly "adverse actions" at all. Misplacing paperwork, mislabeling correspondence and failing to notify Plaintiff of her leave within five days of receiving her certification may be classified in a variety of ways – but not as adverse employment actions[2]. At best, these acts may be technical violations of the FMLA, but these acts themselves did not reduce benefits or constitute some

---

[2] Again, these are the only acts of interference pursued by plaintiff in her response to the Motion for Summary Judgment. See ECF No.36 at 5-9.

denial of leave. And if deemed as a form of technical violation, the mere fact of a technical

violation does not equate to interference. See *Sarno v. Douglas Elliman-Gibbons & Ives, Inc.*,

183 F.3d 155, 161 (2d Cir. 1999)(notice error could not rationally be found to impede ability to

return to work).

Because Plaintiff fails to demonstrate an adverse action by her employer, her interference

claim fails at the second element.

> 2.      Retaliation Claim:

Plaintiff claims that Defendant retaliated against her in violation of the FMLA by

terminating her as of September 1st, four weeks before the conclusion of her FMLA leave. (ECF

Nos. 1, pp.3-4; 36, pp.13-19). Defendant responds that Plaintiff's retaliation claim fails for two

reasons: (1) she was never terminated and (2) even if the August 22nd letter could be construed as

a termination, there is no evidence that it was sent because Plaintiff was exercising her FMLA

rights. Rather, it would have been sent as a result of Plaintiff's perceived job abandonment.

(ECF No. 36, pp. 12-17; 39, pp.11-15).

To state a *prima facie* retaliation claim, Plaintiff must show that: (1) she engaged in a

protected activity; (2) Defendant took an action that a reasonable employee would have found

materially adverse; and (3) there exists a causal connection between the protected activity and

the adverse action. *Metzer v. Fed. Home Loan Bank of Topeka*, 464 F.3d 1164, 1171 (10th Cir.

2006).

Neither party disputes that Plaintiff engaged in a protected activity in requesting and

taking FMLA leave to look after her seriously ill daughter and was therefore engaged in a

protected activity. However, Plaintiff's retaliation claim founders on the second and third

elements – an action taken by her employer that could reasonably be seen as materially adverse and a causal connection between the activity and the action.

Plaintiff's claim that she believed that as a result of taking FMLA leave she was terminated on September 1st is undercut by her own actions including, but not limited to, her continued albeit ineffective efforts after August 22nd to provide the requested medical certification for her leave, not reporting for work at any time during the FMLA leave, on-going communication throughout the relevant time period with Defendant regarding both her leave and the date for her return to work, as well as her September 24th emailed resignation. These actions support Defendant's assertion that Plaintiff was, and understood that she was, still employed after September 1st and thus had suffered no material adverse employment action by Defendant.

The Court finds that Plaintiff was not "terminated" on September 1st and thereby deprived of her FMLA leave, and that no reasonable jury could find otherwise. While the parties disagree about whether the August 22, 2014, letter was a warning letter or termination,[3] there is no dispute that the letter was retracted and all 12 weeks of FMLA leave were approved through September 28, 2014. Plaintiff's own Complaint acknowledges this fact. "[O]n or about September 10, 2014, Plaintiff received a retraction letter stating that she was approved for continuous leave of absence under FMLA through September 28, 2014." (ECF No.1 at ¶16). Even after Plaintiff's scheduled return date, Ms. Frey continued to communicate with Plaintiff. And in Plaintiff's September 24, 2014, email to Ms. Frey, Plaintiff stated that she would not

---

[3] Defendant's letter was prospective as to what would happen on September 1, 2014, given Ms. Frey's lack of receipt of necessary FMLA paperwork. Thus, Defendant characterizes the letter as a "warning." Plaintiff claims that she did not receive the letter until after September 1st and, thus, the letter was a termination. According to Plaintiff, all subsequent acts of Defendant, e.g., reinstatement, were nullities because she considered herself terminated. (ECF No. 33-5at p.5 (deposition page 96)). Plaintiff's subjective beliefs, however, are not determinative. *Samsroth v. City of Wichita*, 555 F.3d 1182, 1184 (10th Cir. 2009)(retaliation elements "prescribe[s] an objective inquiry that does not turn on a plaintiff's personal feelings . . . .).

return to her workplace – never mentioning or suggesting that she had been or considered herself to be fired or terminated prior to that date.  (ECF No. 33-19).

Even if Ms. Frey's letter nevertheless was deemed a termination, Plaintiff has failed to demonstrate a causal connection between that termination and the exercise of her FMLA rights. There is no dispute that Plaintiff was placed on FMLA leave when requested in July 2014.  The record is clear that thereafter - regardless of the disagreements as to the fine details of the document delivery saga - there were repeated efforts by Ms. Frey to have the physician's certification provided to her.  The August 22nd "termination" letter begins with Ms. Frey's explanation that her actions were prompted by Plaintiff's "fail[ure] to provide any information to validate your need for a leave of absence."  (ECF No. 33-17).  Thereafter, when Ms. Frey received the needed documentation, the "termination letter" was rescinded and the full twelve weeks of FMLA leave approved.  A reasonable jury could not find, on these facts, the necessary causal connection.

Plaintiff's response to this issue is solely to rely on temporal proximity citing *Anderson v. Coors Brewing Co.,* 181 F.3d 1171, 1179(10th Cir. 1999), for the proposition that a "temporal proximity of nine weeks can establish causation."  (ECF No. 36 at p.16).  There are two problems with this position.  First, it completely ignores the evidence of the communications and attempted communications about the necessary documents which were occurring throughout the temporal period.  Second, *Anderson* does not stand for the proposition stated by Plaintiff.  In *Anderson,* the Tenth Circuit recognized that it had held one and one-half months, by itself, was sufficient to establish causation and that three months, by itself, was not.  The Tenth Circuit noted that the nine-week period before it was in the gap between these critical signposts and

*assumed* for the sake of argument that, nine weeks was sufficient so that it could reach the pretext analysis.  There plaintiff's case failed.  *Anderson,* 181 F.3d at 1179.

Like *Anderson,* this case falls within the "gap[4]."  But, unlike *Anderson,* the temporal issue here does not stand alone.  As noted, the evidence is clear that the reason Ms. Frey sent the August 22, 2014, letter was because she had not received the necessary documentation to support the FMLA claim.  Plaintiff's *prima facie* case therefore fails.

## V.   CONCLUSION

For the reasons stated above, Defendant's Motion for Summary Judgment (ECF No. 33) is GRANTED.

The Court hereby orders the Clerk of the Court to enter JUDGMENT in favor of the Defendant in accordance with this Order.

IT IS SO ORDERED
DATED this 29th day of November, 2016.

BY THE COURT:

_____
RAYMOND P. MOORE
United States District Judge

---

[4] Plaintiff asserts that the time between exercise of right and termination was eight weeks.  (ECF No. 36 at p.16).  She calculates the time as being between July 7 and September 1, 2014.